# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
## WESTERN DIVISION

KAREN L. MAUDLIN,                                      Case No. 1:14-cv-256

          Plaintiff,                             Beckwith, J.
                                                       Bowman, M.J.
    v.

COMMISSIONER OF SOCIAL SECURITY,

          Defendant.

## REPORT AND RECOMMENDATION

Plaintiff Karen L. Maudlin filed this Social Security appeal in order to challenge the Defendant's finding that she is not currently disabled.  *See* 42 U.S.C. §405(g). Proceeding through counsel, Plaintiff presents several claims of error for this Court's review.  The Commissioner filed a response, to which Plaintiff filed no reply.  As explained below, the ALJ's finding will be AFFIRMED, because it is supported by substantial evidence in the administrative record.

## I. Background

On May 20, 2011, Plaintiff filed an application for disability insurance benefits ("DIB"), alleging a disability onset of June 3, 2011 due primarily to back pain and depression.  Her application was denied initially and upon reconsideration, following which Plaintiff sought an evidentiary hearing.  A hearing was held in Dayton, Ohio on February 13, 2013, at which Plaintiff appeared with counsel and presented testimony.  A vocational expert also presented testimony.  (Tr. 48-80).  On May 18, 2013, Administrative Law Judge ("ALJ") Scott Canfield filed a written decision in which he determined that Plaintiff was in fact disabled due to her back pain and depression from

her disability onset date on June 3, 2011 through December 31, 2012. However, the ALJ further determined that Plaintiff's condition medically improved beginning on January 1, 2013 to the point that she was no longer disabled as of that date. (Tr. 23-42). Plaintiff challenged the determination that her condition had improved to the point that she was no longer disabled, but the Appeals Council denied further review, leaving the ALJ's decision as the Commissioner's last decision.

Born in September 1967, Plaintiff remained a "younger individual" at the time of the ALJ's decision. She has a bachelor's degree and worked as a pharmaceutical sales representative for more than thirteen years, with additional past relevant work as a manufacturer's representative. (Tr. 56). Plaintiff has not engaged in substantial gainful activity since her alleged disability onset date in June of 2011. (Tr. 27).

Plaintiff has a well-documented history of back pain, and the ALJ determined that she had a severe impairment of degenerative disc disease of the lumbar spine with residuals of surgery. (Tr. 28). Although Plaintiff also alleged depression, the ALJ determined that impairment was only "mild" and not severe, a finding Plaintiff does not challenge here. (Tr. 29-32). Based upon her back impairment, the ALJ determined that from June 3, 2011 through December 31, 2012, the Plaintiff was disabled because she could only lift "less than 10 pounds occasionally; stand or walk for more than brief periods not to exceed 10 minutes at a time or for more than a total of one hour during an eight-hour workday; sit for no more than 30 minutes at a time for more than four hours during an eight-hour workday," and had a multitude of other restrictions on climbing, stooping, crouching, and crawling. (Tr. 33). Considering the evidence of record, the ALJ found her "medically determinable impairments could reasonably be expected to produce the alleged symptoms," and that "the claimant's statements

2

concerning the intensity, persistence and limiting effects of these symptoms are generally credible."  (*Id.*).  As a result of her severe back impairment, the ALJ concluded that Plaintiff "could not sustain even sedentary work on a full-time basis" through December 31, 2012.  (Tr. 34).

Despite that initial disability determination, the ALJ further determined that "the medical evidence documents significant improvement in symptoms and clinical findings" beginning on January 1, 2013.  (Tr. 34, 36).  Therefore, beginning on that date, the ALJ found that a combination of the implantation of a spinal cord stimulator and ongoing physical therapy improved Plaintiff's condition to the point she was no longer disabled. Beginning on January 1, 2013, therefore, the ALJ determined that Plaintiff had regained the RFC to perform a limited range of sedentary work, to the extent that she had the ability "to lift and carry 10 pounds occasionally, stand/walk for a combined total of two hours and sit for a total of six hours during an eight-hour workday, and…frequently stoop, crouch, crawl and climb ramps and stairs."  (Tr. 37).  In contrast to the earlier favorable findings, the ALJ found that Plaintiff's complaints of ongoing disability were "not entirely credible" after January 1, 2013.  (*Id.*).  Although the ALJ determined that Plaintiff would be unable to perform her past relevant work, (Tr. 40), he found that she still could perform other jobs that exist in significant numbers in the national and regional economies, including charge account clerk, tube operator, and microfilm document preparer.  Therefore, the ALJ determined that Plaintiff's disability ended on January 1, 2013.  (Tr. 41).

## II.  Analysis

## A.  Judicial Standard of Review

To be eligible for benefits, a claimant must be under a "disability."  *See* 42 U.S.C. §1382c(a).  Narrowed to its statutory meaning, a "disability" includes only physical or mental impairments that are both "medically determinable" and severe enough to prevent the applicant from (1) performing his or her past job and (2) engaging in "substantial gainful activity" that is available in the regional or national economies.  *See Bowen v. City of New York*, 476 U.S. 467, 469-70 (1986).

When a court is asked to review the Commissioner's denial of benefits, the court's first inquiry is to determine whether the ALJ's non-disability finding is supported by substantial evidence.  42 U.S.C. § 405(g).  Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (additional citation and internal quotation omitted).  In conducting this review, the court should consider the record as a whole.  *Hephner v. Mathews*, 574 F.2d 359, 362 (6th Cir. 1978).  If substantial evidence supports the ALJ's denial of benefits, then that finding must be affirmed, even if substantial evidence also exists in the record to support a finding of disability.  *Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994).  In other words, this Court must affirm even if the Court itself might have reached a different conclusion in reviewing the same evidence.  As the Sixth Circuit has explained:

> The Secretary's findings are not subject to reversal merely because substantial evidence exists in the record to support a different conclusion . . . . The substantial evidence standard presupposes that there is a 'zone of choice' within which the Secretary may proceed without interference from the courts.  If the Secretary's decision is supported by substantial evidence, a reviewing court must affirm.

*Id.* (citations omitted).

In considering an application for supplemental security income or for disability

4

benefits, the Social Security Agency is guided by the following sequential benefits analysis: at Step 1, the Commissioner asks if the claimant is still performing substantial gainful activity; at Step 2, the Commissioner determines if one or more of the claimant's impairments are "severe;" at Step 3, the Commissioner analyzes whether the claimant's impairments, singly or in combination, meet or equal a Listing in the Listing of Impairments; at Step 4, the Commissioner determines whether or not the claimant can still perform his or her past relevant work; and finally, at Step 5, if it is established that claimant can no longer perform his or her past relevant work, the burden of proof shifts to the agency to determine whether a significant number of other jobs which the claimant can perform exist in the national economy.  *See Combs v. Com'r of Soc. Sec.*, 459 F.3d 640, 643 (6th Cir. 2006); 20 C.F.R. §§404.1520, 416.920.  A plaintiff bears the ultimate burden to prove by sufficient evidence that he or she is entitled to disability benefits.  20 C.F.R. §404.1512(a).

A similar eight-step sequential analysis applies when evaluating cases of medical improvement after finding a closed period of disability.   In such cases, the Commissioner examines "whether the beneficiary is working (step 1); if not, does the impairment meet or equal a Listing (step 2); if not, has there by 'any' medical improvement (step 3); if so, does the medical improvement relate to the ability to work (step 4); if there is no improvement related to ability to work, does an exception apply (step 5); if there is an improvement related to work ability, are the current impairments alone or in combination 'severe' (step 6); if so, does the benefiicairy's residual functional capacity permit performance of past work (step 7); if not, does the beneficiary have the RFC to perform other work (step 8)."  *Boone v. Com'r of Soc.* Sec., 277 F. Supp.2d 739, 744 (E.D. Mich. 2003)(citing 20 C.F.R. §1594).

**B.  Burden of Proof in Closed Period Case Rests on the Commissioner**

The sole issue in this case is whether the ALJ's determination that Plaintiff experienced a significant medical improvement of her condition, beginning January 1, 2013, is supported by substantial evidence.  Because the ALJ first determined that she was disabled beginning on her alleged disability onset date, it is the Commissioner who bears the burden of proof to establish that the Plaintiff's impairment has medically improved.  See 42 U.S.C. §423(f)(1).

> If an ALJ has found a claimant disabled for a closed period, the ALJ must find a medical improvement in the claimant's condition to end her benefits. *Niemasz v. Barnhart,* 155 F. App'x 836, 839–40 (6th Cir.2005). … The regulations define "medical improvement" as "any decrease in the medical severity of your impairment(s) which was present at the time of the most recent favorable medical decision that you were disabled.... A determination that there has been a decrease in medical severity must be based on changes (improvement) in the symptoms, signs and/or laboratory findings associated with your impairment(s) [.]" 20 C.F.R. §§ 404.1594(b)(1), 416.994(b)(1). The burden of proof to establish that a claimant has experienced a medical improvement which renders her capable of performing substantial gainful activity lies with the Commissioner. *See Kennedy v. Astrue,* 247 F. App'x 761, 765 (6th Cir.2007).

*Brown v. Com'r of Soc. Sec.*, No. 1:13-CV-851, 2015 WL 502143, at *5 (S.D. Ohio Feb. 5, 2015), adopted by Order filed March 9, 2015 (Doc. 18 in Case No. 13-cv-851-SJD).

**C.  Evidence of Medical Improvement**

In order to support the Commissioner's termination of benefits as of January 1, 2013, substantial evidence must show that (1) there has been medical improvement that relates to the ability to work; and (2) that the plaintiff now has the ability to engage in substantial gainful ability.  *Cutlip v. Sec'y of HHS*, 25 F.3d 284, 286 (6th Cir. 1994). The ALJ found medical improvement based primarily upon Dr. Schertzinger's records, which he found evidenced steady improvement in Plaintiff's symptoms, with corresponding increases in functional capacity after the implantation of a spinal cord

stimulator in August 2012. (Tr. 37). Based upon contemporaneous physical therapy records, the ALJ found that Plaintiff's greatest obstacle to returning to work was deconditioning, which is not a medically determinable impairment. (Tr. 37-38). The Commissioner argues that the ALJ's findings were supported by substantial evidence because the ALJ reasonably limited Plaintiff to a limited range of sedentary work based upon her continuing pain symptoms with reduced functional capacity. (Tr. 37). The ALJ noted that the most recent medical records reflected normal sensation, normal gait, and other improvements, pointing out "there is no longer evidence of nerve root compression, reflex, sensory, or motor deficit, or positive strength leg raise testing." (Tr. 36; *see also* Tr. 37).

Plaintiff began to experience significant back pain prior to her disability onset date, and underwent her first significant surgical intervention – an anterior diskectomy and cage fusion of L5-S1 with bone grafting and plating on September 4, 2008 - while still employed. Initially positive results were not maintained, and she experienced increased low back pain after the birth of her third child in 2010. By June 3, 2011, there is no dispute that she was no longer able to sustain full-time work. After more conservative treatment failed and imaging studies revealed possible foraminal stenosis as well as a leftward positioned screw tip that was contacting the L5-S1 nerve root and additional degenerative changes at multiple levels, she underwent a second surgery on July 19, 2011 - a posterior spinal fusion from L4-S1. (Tr. 28; *see also* Tr. 278-279, 355-356, 325-326). Soon after that surgery, both clinical records and imaging studies supported Plaintiff's continuing pain complaints and significant functional limitations. For example, a physical therapy evaluation dated December 28, 2011 reported Plaintiff's pain level ranged from 3/10 at best to 9/10 at worst. (Tr. 373-375). A PT

7

discharge summary dated April 18, 2012 reported a similar pain level, ranging from 3/10 at best to 8/10 at worst.  (Tr. 411-412).  In March 2012, Plaintiff reported using Oxycodone twice per day for breakthrough pain, (Tr. 904), but in an office note dated June 8, 2012, Dr. Schertzinger reported an increase in the use of Oxycodone for breakthrough pain of up to four times per day.  (Tr. 902).

According to the ALJ, the evidence shows that Plaintiff's medical condition substantially improved in the latter months of 2012, after the implantation of a spinal cord stimulator.  Plaintiff underwent a trial of the stimulator on August 6, 2012. (Tr. 567-568).  On August 8, 2012, she reported being able to go on 3-4 errands in one outing, a change from the past in which she could go on no more than one errand.  (Tr. 665).  She reported she had stopped all pain medication except 1-2 tablets of Vicodin a day.  (Id.).  A week following implantation of the stimulator, Plaintiff reported being "very happy with the pain relief she is getting during the trial [of the stimulator]."  (Tr. 649).  Plaintiff underwent full implantation of the device on August 31, 2012.  (Tr. 477-479).  Post-operatively, Plaintiff's "subjective complaints were reduced by 95%."  (Tr. 479).  She reported being able to do many activities of daily living which she was previously unable to do.  (Id.).  She reported similar improvement in September 2012, including that she was able to sit, stand, and walk for longer periods than before.  (Tr. 631).

However, on September 24, 2012, Plaintiff was evaluated by a physical therapist, Tina Cope, for a functional capacity evaluation. On the date of her exam, Plaintiff reported that her pain level ranged from 4/10 to 9/10.  (Tr. 705).  Physical exam showed slightly decreased strength in Plaintiff's bilateral lower extremities at 4+/5 or 4/5, and deep tendon reflexes were also diminished.  (Tr. 707).  Ms. Cope opined that Plaintiff demonstrated functional capacities that were "below" a sedentary level of work in some

respects, but somewhat contradictorily concluded that she would be able to "perform at a Sedentary level of work" as defined by the Dictionary of Occupational Titles.  (Tr. 705).

There is some evidence that Plaintiff's pain level following the implantation of the spinal cord stimulator did not remain at the "reduced by 95%" level she first reported.  In addition to her report of significant remaining pain levels to the PT on September 24, 2012, in October 2012 she reported that she continued to use Oxycodone for breakthrough pain.  (Tr. 624).   Similarly, in his office note of December 14, 2012, Dr. Schertzinger reported that Ms. Maudlin felt she "continues to improve" but still needed medication for breakthrough pain once per day.  (Tr. 896).  At that point her deep tendon reflexes had improved to 2, but muscle strength in her lower extremities was still slightly diminished at "upper 4-"  (Id.).  Her gait and posture were "fair," and she had negative straight leg raising – an objective test that also demonstrated improvement over prior records.  (*Id.*).

An office note dated January 3, 2013 reported deep tendon reflexes diminished to 1 bilaterally, with no change in muscle strength in Plaintiff's lower extremities, and medication for breakthrough pain again increased slightly to twice per day. (Tr. 890).  In contrast to that clinical report, a nerve conduction study on the same date showed improvement - normal results with no evidence of radiculopathy.  (Tr. 891).

On January 14, 2013, Dr. Schertzinger completed a Physician's Report of Work Ability at the request of the Bureau of Workers' Compensation.  (Tr. 697-698).  He opined that Ms. Maudlin was temporarily not released to her *prior* position of sales representative from January 1, 2011 through a date 60 days in the future - March 13, 2013.  However, he opined in the same form that Plaintiff would be able to sit, walk, and

stand 8 hours each with a break, such that she would be able to work 40 hours per week in other work.   Moreover, he stated that she could lift and carry up to twenty pounds constantly, occasionally push and pull up to forty pounds, frequently bend, squat, climb, and reach above her shoulder, and occasionally kneel and twist.  (Tr. 697).

On January 24, 2013, Dr. Schertzinger reported deep tendon reflexes in the knee and ankle were 1+ bilaterally, with manual muscle testing of the lower extremities slightly improved still further, at "upper 4" bilaterally. (Tr. 889).  On January 25, 2013, eleven days after completing the prior functional assessment for the BWC, Dr. Schertzinger completed a second physical RFC questionnaire at the request of counsel. (Tr. 873-876).  In that form, he offered opinions on that form that were significantly more limiting than given on January 14, 2013.  For example, he opined that Plaintiff could walk only one block without rest or severe pain, could sit for only one hour at a time but 6 hours total, and could stand only for thirty minutes at a time, but for about 4 hours total in an eight-hour day.  (Tr. 874-875).  In further contrast to the January 14 form, he opined she could frequently lift and carry less than 10 pounds and occasionally lift and carry 10 pounds in a competitive work situation.  (Tr. 875).  He offered additional limitations on twisting and climbing stairs (occasional), stooping and climbing ladders (rarely), and crouching or squatting (never).  (Tr. 876).  Finally, on January 25, 2013 he opined that Plaintiff would miss about three days of work each month.

After the February 13, 2013 hearing date, Plaintiff submitted new records to the Appeals Council, but the Appeals Council declined to further review the ALJ's decision in light of the newly submitted evidence, finding it not to be new and material under its guidelines.  One of the post-hearing records, an office note dated March 1, 2013 by Dr. Schertzinger, does appear to have been considered by the ALJ.  In that note, Plaintiff

reported that she continued to use Oxycodone for breakthrough pain twice per day, rarely only once per day, with deep tendon reflexes at 1 bilaterally.  (Tr. 886).  In the same note, Dr. Schertzinger wrote of Plaintiff's need for "active whole body reconditioning → work conditioning next step, do feel she is ready to proceed if approved by PT."  (*Id.*).  He recorded Plaintiff's comment, "can tell my core is getting stronger."  However, he also recorded that, notwithstanding his belief that she was ready for work conditioning, Plaintiff believed that she was "[u]nable to advance to requested PT/wkly, 'need a day to recover, it kicks me.'" (*Id.*).

### D.  Specific Claims of Error

### 1.  Standards Applicable to Treating Physician Opinion

Plaintiff first argues that the ALJ failed to give the appropriate weight to the opinions of Dr. Schertzinger.  The relevant regulation regarding treating physicians provides: "If we find that a treating source's opinion on the issue(s) of the nature and severity of your impairment(s) is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in your case record, we will give it controlling weight." 20 C.F.R. §404.1527(c)(2); *see also Warner v. Com'r of Soc. Sec.,* 375 F.3d 387, 390 (6th Cir. 2004). The reasoning behind what has become known as "the treating physician rule" has been stated as follows:

> [T]hese sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of the claimant's medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations.

*Wilson v. Commissioner of Social Security*, 378 F.3d 541, 544 (6th Cir. 2004)(quoting

former 20 C.F.R. § 404.1527(d)(2)).  Thus, the treating physician rule requires the ALJ to generally give "greater deference to the opinions of treating physicians than to the opinions of non-treating physicians."  *See Blakley v. Com'r of Social Security*, 581 F.3d 399, 406 (6th Cir. 2009).

Although Plaintiff complains that the ALJ did not expressly state that he was giving "controlling weight" to Dr. Schertzinger's opinions, I find no error.  The ALJ discussed Dr. Schertzinger's records and all of his opinions at great length, noting that after January 1, 2013, his clinical records confirmed "normal sensation and reflexes, as well as negative straight leg raise testing and essentially normal [g]ait." (Tr. 37).  As the ALJ noted, "[o]n two occasions, Dr. Schertzinger confirmed that the claimant is able to perform the general requirements of sedentary work activity."  (Tr. 38).  The ALJ expressly pointed out that the ALJ's RFC findings were consistent with the portion of Dr. Schertzinger's most restrictive assessment of "lifting 10 pounds occasionally, sitting six hours, and standing/walking about four hours during an 8-hour workday."  (*Id.*).  In finding medical improvement relating to Plaintiff's ability to work, the ALJ noted objective medical evidence that Plaintiff  "no longer exhibits neurological deficits, such as reflex or sensory abnormalities, and motor testing revealed only a very mild deficit," with "no evidence of radiculopathy."  (*Id.*).  The ALJ also pointed out that "Dr. Schertzinger's records confirm the steady improvement in symptoms, with corresponding increase in functional capacity, since the implantation of a spinal cord stimulator." (*Id.*).

In evaluating Dr. Schertzinger's opinions, the ALJ acknowledged that Dr. Schertzinger was a treating source, and set forth in detail the regulations that require treating source opinions to be given "controlling weight" if "well supported and not inconsistent with the other substantial evidence in the case record."  (Tr. 39).  Yet the

ALJ also articulated the exception to that rule, pointing out that "controlling weight may not be given to a treating source's medical opinion unless the opinion is well supported by medically acceptable clinical and laboratory diagnostic techniques, and is not inconsistent with the other substantial evidence in the record…."  (Tr. 39-40).

It is clear from the ALJ's extensive discussion of the regulatory scheme and his analysis of Dr. Schertzinger's opinions that he did not believe that all of Dr. Schertzinger's opinions were entitled to "controlling" weight, because they were not all "well supported" by Dr. Schertzinger's clinical records or consistent with other substantial evidence in the record.   Nevertheless, the ALJ gave most of Dr. Schertzinger's opinions "significant weight."  (Tr. 40).   The undersigned finds no error in the ALJ's analysis, to the extent that the ALJ clearly evaluated Dr. Schertzinger's opinions under the relevant standards and extensively cited the pertinent regulations applicable to opinion evidence from treating physicians just before finding that most (but not all) of Dr. Schertzinger's opinions were entitled to "significant" weight.  (Tr. 39-40).

In January 2013, Dr. Schertzinger opined that Plaintiff continued to suffer from some functional limitations.  However, as pointed out by the ALJ, both the RFC opinions offered by Dr. Schertzinger on January 14, 2013, and the opinions provided at the request of counsel on January 25, 2013 are largely consistent with the ALJ's conclusion that Plaintiff was able to engage in a restricted range of sedentary work as of January 1, 2013.  The ALJ determined that Plaintiff could stand/walk for a total of two hours, and sit for a total of six hours, and lift and carry 10 pounds occasionally.  Dr. Schertzinger's January 14, 2013 opinions were not only consistent with that determination, but arguably were even *less restrictive*. For example, although the ALJ limited Plaintiff to 10 pounds occasionally, sitting to six hours and standing or walking to two hours, Dr.

Schertzinger opined on January 14, 2013 that Plaintiff could continuously lift or carry up to 20 pounds, and that she could both stand 8 full hours and sit 8 full hours with breaks. (Tr. 697).

Although there was no objective evidence of any dramatic downturn in Plaintiff's condition after January 14, 2013, and some contrary objective evidence of continued improvement (straight leg testing and nerve conduction study), a second assessment by Dr. Schertzinger soon after January 14 opined that Plaintiff was significantly more limited. However, most of the January 25, 2013 opinions were still consistent with the ALJ's RFC determination. For example, on January 25, Dr. Schertzinger opined that Plaintiff had a "good" prognosis, was "well nourished," with "normal gait/posture." He indicated a downward arrow to note a decrease in pain with 4/5 "B/L" or bilateral lower extremity strength. He stated that her medications were "well tolerated none expected to impact work." (Tr. 873). He stated that her pain was only "occasionally" severe enough to interfere with attention and concentration to perform simple work tasks, and concluded she was capable of low stress jobs, based upon her monthly visits to him and "high level of performance." (Tr. 874).

Despite these findings and his earlier conclusion on January 14 that Plaintiff could perform full-time sedentary (or even light exertional level) work, on January 25, 2013 Dr. Schertzinger offered a few opinions that could be read to support a more restrictive RFC than determined by the ALJ. For example, he opined that Plaintiff could walk only one block, and sit only 1 hour at a time, or stand just 30 minutes at one time. (Tr. 874). He stated that she would need to walk around for up to 90 minutes in an eight-hour day, for 3 minutes at a time, and that she would require a job that permitted her to shift positions at will. (Tr. 875). Nevertheless – and consistent with the RFC

14

determined by the ALJ despite being more restrictive than his January 14 opinions – Dr. Schertzinger opined that Plaintiff could sit for at least 6 hours and stand/walk for 4 hours in a day.  (Tr. 875).  Also consistent with the ALJ's findings, he opined that she could lift and carry less than 10 pounds frequently, and 10 pounds occasionally.  (*Id*.).

Arguably, the only clearly work-preclusive limitation included on the January 25, 2013 form was a check-box that estimated that Plaintiff would miss on average about three days per month as a result of her impairment or treatment.  (Tr. 876).  Dr. Schertzinger also included more significant postural limitations in his January 25 assessment.  Despite giving "significant" weight to Dr. Schertzinger's opinions in finding Plaintiff to be disabled from June 3, 2011 through December 31, 2012, the ALJ discounted Dr. Schertzinger's most limiting January 25 opinions based upon the ALJ's belief that his records "documented steady improvement" after that date. (Tr. 40).

Plaintiff argues this was error because there is no medical opinion of record that clearly states that Plaintiff experienced a significant medical improvement as of January 1, 2013.  A similar argument was made and rejected in another case involving claims of persistent back pain after surgery, *Neimasz v. Barnhart*, 155 Fed. Appx. 836, 838-839 (6th Cir. 2005). Consistent with *Niemasz*, I find no error.  It is the function of the ALJ to determine a Plaintiff's limitations, including her RFC.  There is no requirement in the case law or in the regulations that requires a medical source to specifically opine that Plaintiff has experienced a medical improvement.  As just discussed, the vast majority of Dr. Schertzinger's two functional assessment opinions in January 2013 were consistent with the ALJ's conclusion that Plaintiff experienced a significant work-related medical improvement based upon both objective testing and clinical records.

Plaintiff argues that the ALJ erred when he failed to express whether Dr.

15

Schertzinger's post-2012 opinions were well-supported by medically acceptable clinical and laboratory diagnostic techniques and not inconsistent with the other substantial evidence in the case.  I find no error.  Reading the opinion as a whole, it is obvious that the ALJ found that portion of Dr. Schertzinger's opinions not to be well supported and inconsistent with Dr. Schertzinger's own notes, as well as other objective medical evidence and substantial evidence in the record as a whole.  In addition to clearly articulating the relevant standards to be applied, the ALJ stated that Dr. Schertzinger's opinion "that the claimant would miss approximately three days of work per month is not based on the improvement in clinical and objective findings and is only supported by the claimant's subjective statements."  (Tr. 40).  The ALJ went on in the same paragraph to detail the records documenting "the steady improvement in symptoms since the implantation of the spinal cord stimulator," and why the ALJ believed that the "postural limitations he set forth [in his January 25 report] are excessive for the mildly reduced range of motion documented in the record."  (*Id.*).  The ALJ also pointed out that Dr. Schertzinger predicted the "continuous" ability to sit, stand, and walk, apparently anticipating Plaintiff's return to her former sales position beginning in early March 2013, but with "no basis for not increasing the claimant's functional capacity with the corresponding decrease in clinical findings."  (Tr. 40).  Therefore, the ALJ gave "minimal weight" to the opinions of Dr. Schertzinger that "purports to establish ongoing disability after December 31, 2012."  (*Id.*).

A brief mention is warranted concerning one particular piece of evidence that Plaintiff challenges - the ALJ's reference to her normal gait and lack of need for any ambulatory aid.  Because Plaintiff previously alleged that she had difficulty walking and could only walk for ten to fifteen minutes before experiencing break through pain, it was

not unreasonable for the ALJ to reference her normal gait in the context of the record as a whole.  Dr. Schertzinger consistently evaluated her gait.  As discussed above, the ALJ offered multiple reasons for rejecting the most extreme opinions offered by Dr. Schertzinger in his January 25 report.  Thus, the ALJ appropriately discussed and gave "good reasons" for rejecting Dr. Schertzinger's most limiting opinions of January 25, 2013, including the opinions that Plaintiff required more extreme postural limitations and would miss work three days per month. (Tr. 40).

## 2.  Consideration of Physical Therapist Assessment

Plaintiff's second assertion of error concerns the ALJ's failure to adequately consider the "other source" opinion of Plaintiff's physical therapist, Ms. Cope.  Because Ms. Cope is not a physician or psychologist, she is not considered to be an "acceptable medical source" under the regulatory scheme.    See 20 C.F.R. §404.1502. Nevertheless, Social Security Ruling 06-03p provides that opinions from "other sources" such as physical therapists or social workers should be evaluated using all relevant factors that would be applied to other medical sources, including the length of the relationship, consistency of the opinion, and supportability of the same.

Ms. Cope completed a functional capacity evaluation on September 24, 2012.  In that assessment, Ms. Cope concluded that Plaintiff actually would be able to perform sedentary work.  (Tr. 705, "Ms. Maudlin is able to perform at a Sedentary level of work.").    However, she also stated that Plaintiff could lift and carry up only to five pounds (rather than 10 pounds as determined by the ALJ), frequently push seventeen and one-half pounds, frequently pull seven and one-half pounds, occasionally push thirty-five pounds, and occasionally pull fifteen pounds.  (Tr. 706).  She found that Plaintiff could "frequently" sit, reach, and climb stairs and ladders (up to 66% of the

time), "occasionally" stand or walk (up to 33% of the time), and occasionally stoop, squat, or kneel. (Tr. 706).

The ALJ briefly referenced some physical therapy records to support his finding that Plaintiff's primary obstacle to full-time work was deconditioning rather than any medically determinable impairment. (Tr. 37-38). Nevertheless, the Commissioner concedes that the ALJ did not specifically discuss Ms. Cope's September 2012 opinion. Regardless, the undersigned agrees with the Commissioner that any error in failing to discuss the opinion was harmless. Ms. Cope's September 2012 opinion was within the disability period found by the ALJ and to that extent does not contradict the ALJ's determination. While containing some internal contradictions and inconsistencies, Ms. Cope also stated in September 2012 that Plaintiff would be able to perform sedentary work. (Tr. 705). Moreover, her September 2012 opinion does not state how long Ms. Cope believed Plaintiff's more extreme limitations were likely to last, and Dr. Schertzinger's records provide substantial evidence in support of the ALJ's conclusion that Plaintiff subsequently experienced medical improvement.

### 3. Credibility Assessment

Plaintiff's claim of continuing disability primarily rests upon her pain complaints. Subjective complaints of pain may support a claim for disability. *See Duncan v. Sec'y of HHS*, 801 F.2d 847, 852 (6th Cir. 1986). However, in cases in which complaints of disabling pain are not well-supported by medical evidence, the credibility of the claimant is often critical. *See Tyra v. Sec'y of HHS*, 896 F.2d 1024, 1030 (6th Cir. 1990)(Though claimant's physicians consistently reported Tyra's subjective complaints of pain, he had no underlying neurological abnormalities, atrophy or proportionate loss of sensory and reflex reactions."); *Daniels v. Com'r of Soc. Sec.*, 2011 WL 2110145 at*4 (S.D. Ohio

18

May 25, 2011)(normal neurological findings or other results of objective testing may be considered in determining credibility of subjective complaints, citing *Cross v. Com'r of Soc. Sec.*, 373 F. Supp.2d 724, 732 (N.D. Ohio 2005)).  As other courts have noted, many people experience chronic pain that is less than disabling.  *See Blacha v. Secretary of Health and Human Services*, 927 F.2d 228, 230-231 (6th Cir. 1990)(affirming ALJ's determination that back pain from nerve root compression and herniated disc, coupled with degenerative changes, was not disabling).  In the *Niemasz* case, for example, the Sixth Circuit affirmed the ALJ's determination that Plaintiff had experienced a medical improvement sufficient to return to work, despite some evidence that the plaintiff had developed more disc herniations and continued to experience pain. *Id.*, 155 Fed. Appx. at 840.

In this case, the ALJ found that "the claimants allegations in light of the objective evidence and clinical findings of record…are not consistent with a finding of total disability…and therefore, cannot be accepted as fully credible after December 31, 2012."  (Tr. 39).  The ALJ explained several reasons for his finding that Plaintiff's allegations became less credible over time, including but not limited to his observation of her demeanor and her lack of any pain behaviors or non-verbal expressions of discomfort at the hearing.  He noted that although she described quite limited daily activities, "two factors weigh against considering these allegations to be strong evidence in favor of finding the claimant disabled."  (Tr. 39).  First, he noted that her allegations of limited activities could not be objectively verified.  Second, even if "limited as alleged, it is difficult to attribute that degree of limitation to the claimant's medical condition, as opposed to other reasons, in view of the relatively weak medical evidence and other factors discussed."  For example, the ALJ noted that Plaintiff "cares for a 3-1/2 year old

daughter, which includes bathing, dressing, and taking her to and from preschool.  The claimant testified that she grocery shops, and does laundry, although she does not perform any heavy lifting…."  (Tr. 39).

An ALJ's credibility assessment must be supported by substantial evidence, but "an ALJ's findings based on the credibility of the applicant are to be accorded great weight and deference, particularly since an ALJ is charged with the duty of observing a witness's demeanor and credibility."  *Walters v. Com'r of Soc. Sec.*, 127 F.3d 525, 531 (6th Cir. 1997).  Further, a credibility determination cannot be disturbed "absent a compelling reason."  *Smith v. Halter*, 307 F.3d 377, 379 (6th Cir. 2001).  Thus, it is proper for an ALJ to discount the claimant's testimony where there are contradictions among the medical records, her testimony, and other evidence.  *Warner v. Com'r of Soc. Sec.*, 375 F.3d at 387, 392 (6th Cir. 2004).

Plaintiff focuses on the ALJ's remark that despite her allegations that she could not sit for prolonged periods, she did not change position in her chair or request that she be allowed to stand.  (Tr. 38).  Plaintiff's hearing lasted only thirty-seven minutes, and her testimony was that she was able to sit for about thirty to forty minutes.  (Doc. 13 at 24-25).  Additionally, Plaintiff correctly notes that the record reflects that Plaintiff's counsel intervened and asked if she could stand toward the end of the hearing, presumably in reference to her client's discomfort.  The Commissioner does not directly dispute the presumed error in this respect, but instead points to contrary evidence that undermines Plaintiff's assertions of disabling pain.  For instance, during Plaintiff's period of alleged disability, she informed her doctor that she was flying to Hawaii, a trip by air that necessarily would have taken more than nine hours.  (Tr. 348).  Thus, the Commissioner suggests that Plaintiff's credibility was reasonably challenged.

20

Because the ALJ did not reference the Hawaii trip and found Plaintiff to be generally credible in asserting disabling pain prior to December 31, 2012, the undersigned does not find the Hawaii trip to be relevant.  On the other hand, the undersigned also finds no reversible error in the ALJ's overall credibility assessment, notwithstanding the relatively small error concerning whether Plaintiff changed positions at the end of the hearing.  The ALJ did not over-emphasize that single piece of evidence, but instead discussed Plaintiff's daily activities and ample evidence of medical improvement, as well as her own treating physician's opinions that she could perform sedentary work.  While Plaintiff testified that her symptoms have remained at a disabling level over time, the ALJ reasonably discounted the credibility of her testimony based upon her medical records, daily activities, and other evidence of record.  *See* 20 C.F.R. §404.1529(c)(3)(daily activities may be useful to assess nature and severity of symptoms).  Thus, the Court finds no error in the ALJ's assessment of Plaintiff's subjective pain complaints, which was supported by the record as a whole.

### 4.  Appeals Council Evidence / Sentence 6 Request

It is the decision of the ALJ that is subject to appellate review, not the subsequent decision of the Appeals Council.  *Cotton v. Sullivan, 2* F.3d 692, 695–96 (6th Cir.1993). The Court can therefore consider Plaintiff's arguments related to the consideration of newly-submitted evidence only in connection with her request for a remand pursuant to Sentence Six of 42 U.S.C. § 405(g).  In this case, Plaintiff seeks a sentence six remand to develop additional evidence in the record that Plaintiff contends is new and material. See 42 U.S.C. §406(g)("The court may….at any time order additional evidence to be taken before the Commissioner of Social Security, but only upon a showing that there is new evidence which is material and that there is good

cause for the failure to incorporate such evidence into the record in a prior proceeding.").

The post-hearing evidence tendered to the Appeals Council was primarily comprised of ongoing treatment records from Dr. Schertzinger. However, in addition to the Schertzinger records, Plaintiff submitted evidence that a district hearing officer order ("DHO") from the Ohio Bureau of Workers' Compensation dated May 13, 2013 granted temporary total disability to Plaintiff from June 1, 2011 through March 1, 2013. The DHO permitted additional payment of temporary total disability from March 1, 2013 through May 19, 2013, conditioned upon submission of additional evidence showing that the allowed medical conditions continued to render her temporarily totally disabled. (Tr. 950). The order noted that Plaintiff was scheduled to return to work part-time on May 20, 2013.

Plaintiff argues that there is good cause for her failure to incorporate the "new" ongoing treatment records from Dr. Schertzinger dating from March 20, 2013 to June 6, 2013, as well as the DHO order, since nearly all of those records were generated after the ALJ's decision.[1] Plaintiff contends that her recent records are material because they prove her claim that the ALJ wrongly perceived improvement in her pain level. She suggests that her records reflect – at most - only a temporary remission rather than a more permanent medical improvement.

The undersigned finds the records decidedly mixed, and not cause for remand under Sentence Six. On March 20, 2013, Plaintiff reported she was engaging in approved PT only twice per week because "'its hard with my schedule,' 3 YO child." (Tr.

---

[1]The Commissioner argues that a few of the records, dated just prior to the ALJ's May 18, 2013 decision, were not "new." However, there is no evidence whatsoever that the ALJ would have considered the submission of post-hearing records, in part because counsel verbally assented at the hearing to the ALJ's inquiry as to whether the record was complete. (Tr. 51).

949).  She reported her medications were effective, and that she was "overall relying on Oxycodone less frequent."  (*Id.*).  She also reported "[a]djustment of simulator effective, is able to see progress."  Dr. Schertzinger wrote:  "Overall do feel improvement with current medical management, agree with progress toward job ready, including upcoming job interview allowing her to work in home."  (*Id.*).

At Plaintiff's visit on April 10, 2013, Dr. Schertzinger re-emphasized "active PT focusing on reconditioning," that Plaintiff had failed to pursue after her last office visit due to confusion.  He also recorded her comment that her "breakthrough [pain] nearly gone," despite her report that she continued occasional use of Oxycodone from zero to two times per day. (Tr. 947).

In May 2013, her reported pain level ranged from 3/10 to 7/10, and Dr. Schertzinger noted they would consider obtaining an updated CT of the lumbar spine if her pain continued.  (Tr. 946).  However, he noted disappointment that Plaintiff stopped Neurontin, which was otherwise deemed effective, due to perceived weight gain.  He further noted that he reviewed her PT plan of care with goal of job readiness, "with improved ROM [range of motion], symmetric MMT and recommendation" to increase her strengthening and flexibility.  (Tr. 946).

The last record from Dr. Schertzinger is dated June 6, 2013, and reflects Plaintiff's report of "good news" in terms of having a new job working in marketing for a chiropractic practice 18-24 hours per week.  (Tr. 945).  Plaintiff reported that her chiropractor agreed with the assessment that she needed to "strengthen core," but also reported that she had noticed recent "improvement" and that she was "more satisfied" and "doing well," with "need for coverage [of] BTP [breakthrough pain] less frequent." (*Id.*).  Dr. Schertzinger wrote in that record that "with job goal, unclear whether

continued care necessary/appropriate." (*Id.*).

The Commissioner argues that the new records are not "material" because there is not a reasonable probability that the ALJ would have reached a different conclusion on the issue of Plaintiff's medical improvement.  The undersigned agrees.  There are no updated records showing objective worsening, such as new nerve involvement or positive straight leg testing. *Accord Niemasz v. Barnhart*, 155 Fed. Appx. at 840 (plaintiff's characterization of his improvement as temporary failed to compel reversal, based on evidence and because back injuries "are not generally subject to temporary remissions" under regulatory guidelines).

In addition, the records do not support a different conclusion on the credibility of Plaintiff's subjective complaints. On March 20, 2013, Plaintiff reported that she was flying to San Francisco for a job interview, a flight estimated to be over four hours in length.  (Tr. 62).  The ALJ already discounted the Plaintiff's subjective pain complaints after December 31, 2012 based upon other evidence.  Evidence of the San Francisco trip is relevant to whether that credibility determination would have changed, particularly in light of the essentially normal physical examination findings.  (Tr. 13, 62).

Last, the DHO order found her unable "to return to and perform the duties of her *former* position of employment"  through March 1, 2013, and did not preclude her from *all* employment. (Tr. 18).  The Order did not specify any work-related limitations.  (Tr. 18-19).  The ALJ agreed that Plaintiff could not return to her former position, so his findings and non-disability determination is not inconsistent with the DHO order. Instead, he determined that other jobs existed in the national and regional economies that Plaintiff could perform.

### III.  Conclusion and Recommendation

For the reasons discussed above, **IT IS RECOMMENDED THAT** Defendant's

decision be **AFFIRMED** and that this case be **CLOSED**.


 *s/ Stephanie K. Bowman*
Stephanie K. Bowman
United States Magistrate Judge

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION**

KAREN L. MAUDLIN,                                    Case No. 1:14-cv-256

    Plaintiff,                              Beckwith, J.
                 Bowman, M.J.
  v.


COMMISSIONER OF SOCIAL SECURITY,

    Defendant.



**NOTICE**

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to this Report & Recommendation ("R&R") within **FOURTEEN (14) DAYS** of the filing date of this R&R.  That period may be extended further by the Court on timely motion by either side for an extension of time.  All objections shall specify the portion(s) of the R&R objected to, and shall be accompanied by a memorandum of law in support of the objections.  A party shall respond to an opponent's objections within **FOURTEEN (14) DAYS** after being served with a copy of those objections.  Failure to make objections in accordance with this procedure may forfeit rights on appeal.  *See Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).