UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

Karen Maudlin,  :  Case No. 1:14-cv-256
  :
   Plaintiff,  :
  :
vs.  :
  :
Carolyn Astrue, Acting Commissioner of  :
Social Security,  :
  :
   Defendant.  :

## ORDER

Before the Court are Plaintiff's objections to the Magistrate Judge's Report and Recommendations. (Doc. 18) Plaintiff generally objects to the Magistrate Judge's Report, recommending that this Court affirm the final decision of the Commissioner granting her a closed period of disability benefits but finding that Plaintiff was not disabled after January 1, 2013. (Doc. 17)

For the following reasons, the Court overrules Plaintiff's objections.

## FACTUAL BACKGROUND

Karen Maudlin filed an application for disability benefits on May 20, 2011, alleging that she was disabled by back pain and depression. After her application was administratively denied, an ALJ conducted an evidentiary hearing on February 13, 2013, at which Maudlin and a vocational expert testified.

The ALJ's May 18, 2013 decision (TR 24-42) concluded that Maudlin suffered from severe impairments of degenerative disc disease of the lumbar spine, with residuals from several back surgeries. The ALJ cited her medical records documenting a history of low back pain, including a discectomy and fusion performed on September

4, 2008.  She reported positive results from that surgery, but her back pain returned in 2010 after the birth of her child.  An MRI documented that the tip of a screw, implanted as part of her first discectomy, was contacting the L5-S1 nerve root.  She had a second fusion surgery (from L4-S1) on July 19, 2011.  She recovered well and began physical therapy on December 28, 2011, but she continued to complain of pain into 2012.  Another MRI revealed additional disc bulges and stenosis in her lumbar spine.  Dr. Schertzinger examined her and recommended the implantation of a spinal cord stimulator.  Maudlin had surgery for that implantation on August 31, 2012, and Dr. Schertzinger's treatment notes document improved clinical findings following that surgery.  Maudlin was also referred for additional physical therapy to improve her strength and conditioning.

      The ALJ then addressed Maudlin's claim of disabling depression, and reviewed her records and her reported daily activities.  Maudlin was evaluated by a state consultant on September 30, 2011, who diagnosed a major depressive disorder, single episode, mild, and assigned Maudlin a GAF score of 63.  That is consistent with mild symptoms and indicates generally good functioning.  The ALJ ultimately concluded that while her records refer to her possible depression, the condition does not rise to the level of a severe impairment.   (Maudlin has not objected to this conclusion.)

      After finding that Maudlin's spinal impairments do not meet or exceed the Listings, the ALJ concluded that from June 3, 2011 through December 31, 2012, Maudlin's functional capacity was not sufficient to allow her to perform ongoing, full-time work.  She could not stand or walk for more than brief intervals, not more than one hour a day, and her ability to sit was significantly limited.  She could not perform even

sedentary work during that period. The ALJ gave significant weight to the opinions of Dr. Schertzinger, finding they were consistent with Maudlin's marked limitations in her ability to work through December 31, 2012.

However, the ALJ also concluded that beginning January 1, 2013, Maudlin's impairment had medically improved and her disability ended on that date. The ALJ cited her December 14, 2012 examination by Dr. Schertzinger, which documented normal sensation and reflexes, fair hamstring flexibility, walking without a cane or brace, and negative straight leg raise tests. (TR 896, Ex. 28-F at 11) While her range of motion was somewhat limited, her muscle testing revealed no more than a minimal reduction, and there was no evidence of atrophy. Another exam by Dr. Schertzinger on January 3, 2012 documented normal sensation and reflexes, negative straight leg testing, fair flexibility and gait, and her spine was not tender. Nerve conduction studies on the same day were normal, with no evidence of radiculopathy. (TR 891) On January 24, 2013, Maudlin reported to Dr. Schertzinger that her "core is getting stronger," and testing and observations of her gait and walk were essentially normal. (TR 889)

Dr. Schertzinger completed two physician's reports in January 2013. The first is an Ohio Workers Compensation report which Dr. Schertzinger signed on January 14, 2013, in which he stated that Maudlin could lift and carry up to 20 pounds constantly, frequently bend, squat and climb, and occasionally kneel and twist. (TR 697, Ex. 20-F at 1)[1] The second report is on a form presumably provided to Dr. Schertzinger by

---

[1] The index of medical records states that this report is dated January 9, 2013, but the signature line (TR 698) states the date is January 14, 2013.

counsel, and is dated January 25, 2013.  Dr. Schertzinger stated that Maudlin could lift and carry only 10 pounds occasionally and less than 10 pounds frequently, sit for at least six hours, and stand or walk for four hours a day.   He opined that Maudlin could occasionally climb stairs but rarely stoop or climb ladders, and never crouch or squat.  He believed that Maudlin would likely miss three work days per month due to her back impairment or for treatment.  (TR 873-876, Ex. 26-F)  Maudlin's physical therapy records from January and early February 2013 noted that she had muscle imbalance and segmental dysfunction causing pain that limits her activities, but that she needed to increase motion, strength and core stabilization.  (TR 877-885, Ex. 27-F)  The ALJ cited this evidence in concluding that medical improvement had taken place, noting that "... there is no longer evidence of nerve root compression, reflex, sensory, or motor deficit, or positive straight leg raise testing."  (TR 36)

     The ALJ then addressed Maudlin's residual functional capacity, and found that beginning on January 1, 2013, Maudlin had the ability to lift and carry 10 pounds occasionally, stand/walk for a combined total of two hours and sit for a total of six hours during a workday, and that she is able to frequently stoop, crouch, crawl, and climb ramps and stairs.  (TR 37)  Her capacity for basic work activities had increased from the period of her disability that preceded January 1, 2013.  The ALJ noted Maudlin's claimed limitations on walking, standing and sitting.  But he also noted that she takes care of her young child, goes grocery shopping, is able to do light household chores, prepare dinner, and do laundry, although she does not carry laundry or use a vacuum cleaner.  She described her ongoing pain level at 7 out of 10, even with medication.  The ALJ found that her descriptions of the intensity, persistence and effects of her

reported symptoms were not entirely credible. While the record reflects her descriptions of symptoms and pain, the ALJ found that the clinical evidence and her treating physician's assessments confirm that she had improved to the point of being capable of performing the reduced range of sedentary work encompassed by the ALJ's RFC formulation. The ALJ found that Dr. Schertzinger's records document her steady improvement in her symptoms, and the corresponding increase in her functional capacity since she had the spinal cord stimulator implanted. Her physical therapist noted that her major obstacle is "deconditioning," which is not a medically determinable impairment. And ongoing therapy and exercise would most likely result in increasing her levels of functional capacity.

  In assessing Maudlin's statements about pain, the ALJ cited 20 C.F.R. 404.1529 and SSR 96-7p, which describe the relevant factors used in assessing subjective descriptions of symptoms such as pain. These factors include a claimant's daily activities; the location, duration, frequency and intensity of reported pain; precipitating and aggravating factors; the effect of medication; any other measures used to relieve pain; and other factors that affect functional limitations due to reported pain. Those symptoms will be given credence to the extent that functional limitations caused by them are reasonably consistent with the objective medical evidence. The ALJ found that his residual functional capacity assessment adequately accounts for her description of symptoms; there is no evidence that medication or treatment negatively affects her ability to perform within those restrictions; and no evidence of any ongoing loss of neurological function. On two occasions, Dr. Schertzinger opined that Maudlin is capable of sedentary work, and his treatment records confirm that she has significantly

improved since her date of disability. The ALJ further noted that Maudlin's "presentation at the hearing was [not] consistent with her allegations of severe, intractable, and ongoing low back pain." (TR 38) The ALJ did not see Maudlin exhibit a "discernible limp or gait impairment" while walking, and she did not display pain behaviors such as wincing or expressions of discomfort.

The ALJ then discussed Dr. Schertzinger's two assessments completed in January 2013. After reciting the Social Security rules governing consideration of medical opinions, the ALJ concluded that Dr. Schertzinger's opinions are entitled to significant weight to the extent that they show that Maudlin can perform the reduced range of sedentary work encompassed by the ALJ's RFC assessment. The ALJ discounted his opinion that Maudlin would miss three days of work every month because it was not based on clinical and objective findings, but on Maudlin's subjective complaints. The treatment records document objectively steady improvement in reflexes, and sensory and motor strength. Dr. Scherzinger's posture limitations are excessive for the mildly reduced range of motion he documented on examination. The ALJ found his opinions entitled to limited weight after December 31, 2012; he also gave limited weight to the state consultants' reviews, because Maudlin's functional capacity was consistently less than was reported by those consultants.

The ALJ found that Maudlin is unable to perform her past work as a sales representative. The vocational expert testified that there are approximately 6,800 jobs regionally, and 80,000 jobs nationally, that fall within the ALJ's RFC assessment, jobs such as charge account clerk, tube operator, or microfilm document preparer. Based upon all of the evidence, the ALJ concluded that Maudlin was not disabled as of

January 1, 2013, but was entitled to an award of benefits for the period June 3, 2011 through December 31, 2012.  (TR 42)

On June 21, 2013, Maudlin (through her attorney) sought review by the Appeals Council of the ALJ's decision with respect to medical improvement.  She submitted additional records from Dr. Schertzinger of treatment, specifically that on March 1, 2013, Dr. Schertzinger noted decreased strength bilaterally in lower extremities, and Maudlin reported that she needed oxycodone for "breakthrough" pain usually twice per day.  She also submitted evidence of an award  from the Ohio Bureau of Workers' Compensation, granting her temporary total disability benefits from June 1, 2011 to March 1, 2013.  (TR 8-11)  Maudlin argued that the ALJ also erred in assessing her descriptions of her daily activities, and asked the Appeals Council to remand the matter for a further hearing.  On February 3, 2014, the Appeals Council denied her request for review, finding that the additional information did not provide a basis for changing the ALJ's decision.  (TR 1-2)  Maudlin then filed this lawsuit, arguing that the ALJ erred in determining that she was no longer disabled as of December 31, 2012.

The Magistrate Judge thoroughly reviewed the facts and evidence in the record, and correctly articulated the legal standards that apply to a review of the Commissioner's final determination.  In concluding that substantial evidence supports the Commissioner's decision, the Magistrate Judge rejected Maudlin's arguments that (1) the ALJ erred in considering the opinions of Dr. Schertzinger; (2) the ALJ failed to consider the opinions of Maudlin's physical therapist; (3) the ALJ failed to accept Maudlin's subjective complaints and descriptions of her pain and symptoms; and (4) the new evidence she submitted to the Appeals Council entitles her to a Sentence Six

remand under 42 U.S.C. §405(g).

Maudlin raises three objections to the Magistrate Judge's Report: (1) the ALJ erred in finding medical improvement as of January 1, 2013; (2) the Magistrate Judge erred in considering Dr. Schertzinger's opinions; and (3) the evidence she submitted to the Appeals Council was material and constituted good cause for a Sentence Six remand.

## ANALYSIS

Standard of Review

Under 42 U.S.C. § 405(g), this Court reviews the Commissioner's final decision by determining whether the record as a whole contains substantial evidence to support that decision. "Substantial evidence means more than a mere scintilla of evidence, such as evidence a reasonable mind might accept as adequate to support a conclusion." LeMaster v. Secretary of Health and Human Serv., 802 F.2d 839, 840 (6th Cir. 1986) (internal citation omitted). The evidence must do more than create a suspicion of the existence of the fact to be established. Rather, the evidence must be enough to withstand a motion for a directed verdict when the conclusion sought to be drawn from that evidence is one of fact for the jury. Id.

An ALJ's decision that is supported by substantial evidence must be affirmed, even if the Court would have arrived at a different conclusion based on the same evidence. Elkins v. Secretary of Health and Human Serv., 658 F.2d 437, 438 (6th Cir. 1981). The substantial-evidence standard "... presupposes that there is a zone of choice within which the decisionmakers can go either way, without interference by the courts. An administrative decision is not subject to reversal merely because substantial

evidence would have supported an opposite decision." Mullen v. Bowen, 800 F.2d 535, 545 (6th Cir. 1986) (quoting Baker v. Heckler, 730 F.2d 1147, 1150 (8th Cir. 1984)).

This case presents the question of whether the ALJ erred in finding a significant medical improvement in Maudlin's condition. In such cases, the Commissioner bears the burden of proof to establish that improvement. See 42 U.S.C. §423(f)(1); Kennedy v. Astrue, 247 Fed. Appx. 761, 765 (6th Cir. 2007).

The district court reviews de novo a Magistrate Judge's recommendations regarding Social Security benefits claims. Ivy v. Secretary of Health & Human Serv., 976 F.2d 288, 289-90 (6th Cir. 1992).

Medical Improvement

Maudlin argues that the Commissioner failed to produce substantial evidence demonstrating Maudlin's medical improvement. 42 U.S.C. §423(f)(1) states that a disability recipient may no longer be entitled to receive benefits if there is "substantial evidence which demonstrates that (A) there has been any medical improvement in the individual's impairment or combination of impairments (other than medical improvement which is not related to the individual's ability to work), and (B) the individual is now able to engage in substantial gainful activity ...". The ALJ found that Dr. Schertzinger's offices notes from December 14, 2012 through January 24, 2013, together with his two reports of her functional capabilities in January 2013, demonstrated that "there is no longer evidence of nerve root compression, reflex, sensory, or motor deficit, or positive [straight] leg raise testing. As a result, improvement in the claimant's symptoms has been demonstrated." (TR 36)

Maudlin argues that the ALJ's statement is factually incorrect. She cites Dr.

Schertzinger's notes on January 24 and March 1, 2013, noting diminished reflexes at the knee and ankle. The visit notes from December 2012 and January 2013 state that lower extremity muscle strength was "upper 4" or "upper 4-". Maudlin argues that the ALJ erred in finding a lack of neurological deficits and in concluding that Dr. Schertzinger's records show a "steady" improvement in her symptoms.

"Medical improvement" is not synonymous with "full recovery," as Maudlin's arguments seem to suggest. She does not dispute the ALJ's observation that there was no longer any evidence of nerve root compression, sensory or motor deficits (as demonstrated by her normal nerve conduction studies on January 3, 2013), and that her straight leg raise testing was negative. Dr. Schertzinger consistently noted that her gait and posture were fair, and there was no swelling or tenderness in her lumbar region, with the exception of notations of muscle tightness. A Social Security regulation, 20 C.F.R. 404.1594(b)(1), defines "medical improvement" as "any decrease in the medical severity of your impairment(s) ... . A determination that there has been a decrease in medical severity must be based on changes (improvement) in the symptoms, signs and/or laboratory findings associated with your impairment(s)." These regulations plainly do not require that **all** of a claimant's symptoms, signs **and** laboratory findings have improved in order to find that "medical improvement" (e.g., "any decrease in the medical severity" of impairments) affecting the functional capacity to work has occurred.

This is illustrated by Niemasz v. Barnhart, 155 Fed. Appx. 836 (6th Cir. 2005), where the court of appeals affirmed a decision granting plaintiff a closed period of benefits, and finding medical improvement that permitted substantial gainful activity.

The plaintiff injured his back at work, and eventually had spinal discectomy and fusion surgery.  The ALJ awarded him benefits from the date of his injury until approximately two months after his fusion surgery, at which point the ALJ determined that he could perform a sedentary job with routine tasks and limitations on lifting, twisting and bending.  The ALJ cited medical examinations documenting that he did not have total motor loss, muscle weakness or atrophy, objective data by which the ALJ discounted plaintiff's subjective complaints of disabling pain.  In addition, the plaintiff testified that he could walk and stand for short periods, and he was able to do some household chores.  The ALJ found that plaintiff's surgery had alleviated some components of his back impairment that had entitled him to a closed period of benefits, and additional problems that arose after that surgery (additional disc herniations) did not render him disabled.  The Sixth Circuit agreed, noting that the Commissioner's decision will be affirmed by the courts "when substantial evidence supports it, even if the evidence could also support another conclusion."  Id. at 840.

     Maudlin also cites the fact that she reported the need to take pain medication for "breakthrough" pain once or twice a day, and that she needed a day to rest after attending physical therapy sessions in March 2013.  Neither of these reports show that the ALJ's decision with respect to medical improvement is not supported by substantial evidence.  On April 22, 2011, when Maudlin was first seen by Dr. Schertzinger, she reported to him that she was taking up to six Percocet a day for pain relief.  (TR 766) The reduction in medication use is clearly an indication of improvement in her symptoms.  And with regard to physical therapy, the ALJ noted that the primary goal of her treatment "appears to be general conditioning and strengthening."  (TR 38) Pursuing

physical therapy to increase conditioning and strength may leave her needing to rest, but the very fact that she was able to pursue that therapy and regularly participate in it is, in the Court's view, additional evidence supporting the ALJ's conclusion that "medical improvement" has occurred. The record in this case might support a different interpretation than that placed upon it by the ALJ. But in such cases, given a conclusion that substantial evidence supports the ALJ's decision and absent legal error, this Court must affirm the Commissioner's decision. Maudlin's objection on this ground is overruled.

<u>Treating Physician</u>

Maudlin objects to the ALJ's consideration of her treating physician's opinions to conclude that she was no longer disabled as of January 1, 2013. For purposes of Social Security disability evaluations, a treating physician's opinion will be accorded controlling weight if it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with other substantial evidence in [the] case record[.]" <u>Rogers v. Commissioner of Social Sec.</u>, 486 F.3d 234, 242 (6th Cir. 2007). The ALJ must identify specific reasons for discounting a treating physician's opinion, reasons that are "sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." <u>Id</u>. 20 C.F.R. § 404.1527(c)(2) identifies factors the ALJ should address to determine the weight to be given to the opinion, including the length, nature and extent of the treating relationship; whether the opinion is supported by relevant evidence, and is consistent with the record as a whole; the specialization of the source; and any other factors that support or contradict the opinion.

The regulations further state that, in considering any medical opinion,"... the more consistent an opinion is with the record as a whole, the more weight [the ALJ] will give to that opinion." 20 C.F.R. § 404.1527(c)(4). More weight is generally given to an examining source than to a non-examining reviewer, but the weight accorded to any medical opinion must be based on the evidence that supports it, and its consistency with the record as a whole.

The ALJ accepted Dr. Schertzinger's opinions for the period prior to January 1, 2013, because his treatment notes and opinions were consistent with Maudlin's marked limitation in her ability to work, and with the medical findings (x-rays, MRI results, surgical notes, and lab tests) documenting her back impairment. After that date, however, the ALJ concluded that Dr. Schertzinger's observations and office notes documented improvement. His January 14, 2013 Ohio BWC report of work ability states that she could lift and carry up to 10 pounds continuously, and up to 20 pounds constantly; she could push/pull 13-25 pounds continuously, and up to 40 pounds occasionally; frequently bend, squat and climb but occasionally kneel; and sit, stand and walk for eight hours with breaks. The ALJ found that his subsequent opinion on January 25, that Maudlin would miss three days of work every month, was not based on improved clinical findings but only by Maudlin's subjective statements. The ALJ concluded that Dr. Schertzinger's medical records documented improvements in all areas, but his postural limitations in the January 25 report are "excessive for the mildly reduced range of motion documented in the record." (TR 40)

Maudlin objects, noting that Dr. Schertzinger's January 14 assessment (less limiting than his January 25 assessment) also stated that she had not reached

-13-

"maximum medical improvement" and he did not release her to work until March 13, 2013. (TR 697) Regardless of the MMI opinion, Dr. Schertzinger's limitations included in his January 25 assessment are largely incorporated into the ALJ's residual functional capacity assessment. The ALJ limited Maudlin to lifting and carrying 10 pounds occasionally, stand/walk for a combined total of two hours, and sit for six hours during a workday. (TR 37) These are the same as Dr. Schertzinger's limitations, and with respect to stand/walk is even more limited. The ALJ rejected his limitations on other types of movement (twist/stoop/crouch), and his statement that she would miss three work days per month; but the ALJ adequately explained why he found those specific assessments to be inconsistent with Dr. Schertzinger's own treatment records. As the Magistrate Judge observed, Dr. Schertzinger's notes from a January 25 office visit indicated Maudlin's "good" prognosis, "normal gait/posture," a decrease in pain, and that her pain was only "occasionally" enough to interfere with her ability to perform simple work tasks. (TR 873-874) This Court agrees with the Magistrate Judge's finding that the ALJ adequately addressed Dr. Schertzinger's opinions, and gave "good reasons" for rejecting the most severe limitations he included in his January 25 assessment. Maudlin's objection on this ground is overruled.

<u>Remand Under Sentence Six</u>

Maudlin objects to the Magistrate Judge's finding that the new evidence she submitted to the Appeals Council was not material, and did not provide cause for a Sentence Six remand. The Magistrate Judge cited 42 U.S.C. §406(g), which permits the court to remand to the Commissioner, "but only upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate

such evidence into the record in a prior proceeding." Maudlin argued below that Dr. Schertzinger's records from March 20 to June 6, 2013, and the BWC order awarding temporary total disability, are all dated after the February 13, 2013 evidentiary hearing, and almost all after the ALJ's May 18, 2013 decision. She contended that these additional records are material because they show that she had not sustained an improved pain level, but experienced a temporary remission. The Magistrate Judge considered the additional records to be "decidedly mixed," and did not demonstrate good cause for a remand for additional hearings.

In her objections, Maudlin concedes that the additional evidence does not show objective worsening in her impairment (e.g., no new nerve involvement and no positive straight leg raise testing). She contends that they do show diminished reflexes and decreased strength in her lower extremities, but concedes that they document some improvement in her pain levels and a reduction in the need for medication for breakthrough pain. As the Court discussed above, a finding of "medical improvement" does not require evidence showing that **every** symptom, sign and laboratory finding is consistently better than it was on a previous report. Maudlin argues that the new records show a decline in her reflexes, and an uneven history of reported need for breakthrough pain medication. But as the Magistrate Judge observed, on March 20 Maudlin reported that her medications were "effective," and she was relying less frequently on oxycodone. She was "able to see progress," and Dr. Schertzinger noted "improvement with current medical management" and progress towards returning to work. Maudlin also reported that she was flying to San Francisco for a job interview. The next month Maudlin reported that her breakthrough pain was "nearly gone," and on

June 6, she reported that she had a new job working part-time.

The Court agrees with the Magistrate Judge's conclusion that these records do not support a reasonable conclusion that the ALJ would reconsider or alter his May 2013 decision, and that they are not a sufficient basis upon which to remand this matter to the Commissioner.

## CONCLUSION

After a de novo review of the record regarding Maudlin's objections, the Court agrees with and adopts the Magistrate Judge's Report and Recommendation. Maudlin's objections to that Report (Doc. 18) are overruled. The Commissioner's decision granting Maudlin a closed period of benefits from June 3, 2011 through December 31, 2012, and finding Maudlin no longer disabled as of January 1, 2013, is affirmed.

SO ORDERED.

THIS CASE IS CLOSED.

DATED: September 8, 2015               s/Sandra S. Beckwith
                                       Sandra S. Beckwith, Senior Judge
                                       United States District Court